UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-20795-BLOOM/Elfenbein

CHERYL DIAZ,

      Plaintiff,

v.

MIAMI-DADE COUNTY and
MAJOR BENNY SOLIS,

      Defendants.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants Miami-Dade County (the "County")
and Major Benny Solis' ("Solis") (together, "Defendants") Joint Motion for Final Summary
Judgment and Supporting Memorandum of Law ("Motion"), ECF No. [38]. Plaintiff Cheryl Diaz
filed a Response in Opposition ("Response"), ECF No. [43], to which Defendants filed a Reply,
ECF No. [51]. The Court has carefully reviewed the Motion, the submissions in support and in
opposition, the record, and is otherwise fully advised. For the reasons that follow, Defendants'
Motion is granted.

## I.  BACKGROUND

At all times material to this case, Plaintiff was employed as a Police Lieutenant with the
Miami-Dade Police Department ("MDPD"). ECF No. [37] at ¶ 1.[1] Based on the alleged

---

[1] Effective January 7, 2025, the MDPD ceased to exist as a department of Miami-Dade County upon the
establishment of the Miami-Dade Sheriff's Office ("MDSO"). ECF No. [37] at ¶ 1 n.1. This resulted in a
transfer of law enforcement services from Miami-Dade County to the Miami-Dade Sheriff's Office. *Id*.
Therefore, beginning on January 7, 2025, Plaintiff was no longer a County employee and was instead
employed as a deputy sheriff of MDSO. *Id*. However, at all times relevant to this case, Plaintiff was
employed by MDPD and the County. *Id*.

discriminatory and retaliatory treatment experienced during her employment, Plaintiff filed her Amended Complaint asserting the following claims: Gender Discrimination under Title VII of the Civil Rights Act of 1991 ("Title VII") (Count I), Gender Discrimination under the Florida Civil Rights Act ("FCRA"), Fla. Stat §§ 760.10 *et seq.* (Count II), Race Discrimination under Title VII (Count III), Race Discrimination under the FCRA (Count IV), Retaliation under Title VII (Count V), Retaliation under the FCRA (Count VI), and Retaliation under 42 U.S.C. § 1983 (Count VII). ECF No. [15].

> Defendants now seek summary judgment on all claims for the following four reasons:

> (1) the majority of Plaintiff's allegations before September 22, 2023, including her removal from the Field Training Coordinator position on September 18, 2023, are time-barred due to Plaintiff's failure to exhaust administrative remedies; (2) Major Solis is entitled to qualified immunity on Count VII because Plaintiff has failed to allege any legal basis for a § 1983 retaliation claim against him individually; (3) Plaintiff has failed to establish a *prima facie* case of gender or race discrimination, or retaliation; and (4) Plaintiff fails to show that the County's legitimate, nondiscriminatory, non-retaliatory, reasons for its employment actions were a pretext for discrimination or retaliation.

ECF No. [38] at 2.

Plaintiff disagrees and contends that "Plaintiff's evidence, viewed collectively and in the light most favorable to her, create[s] a triable issue whether Defendants discriminated and retaliated against her." ECF No. [43] at 21. According to Plaintiff, she has "presented overwhelming temporal proximity, direct evidence of retaliatory animus, powerful comparator evidence, pattern evidence, statistical evidence, and pretext evidence." *Id*.

### A.  Material Facts

Based on the parties' briefings, the statements of material facts, and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted by the Court.

Plaintiff, a White female, was initially hired as a police officer by the MDPD in 2000. ECF No. [37] at ¶ 1. On January 25, 2021, Plaintiff was promoted to her current rank of Police Lieutenant and assigned to the South District.[2] *Id.* at ¶ 2.

The County is a political subdivision of the State of Florida, and it operated the MDPD through January 6, 2025. *Id.* at ¶ 3. Solis became a police officer in 2001 and ultimately served as the major of the MDPD South District from 2022 through January 2025. *Id.* at ¶ 4.

Between 2022 and 2025, Plaintiff's chain-of-command at the South District was comprised of the following individuals: Captain Joseph Meyer and Captain Ryan Howett (2022–2024)/Captain Alexander Diaz de Villegas (2024–2025), Major Benny Solis (2022–2025), Chief Gina Beato-Dominguez (2022–2024)/Chief Eric Garcia (2024–2025), and Director Stephanie Daniels (2022–2025). *Id.* at ¶ 5.

### a. Major Solis Selects Plaintiff for the Field Training Coordinator Position

In 2022, Plaintiff interviewed for the position of Field Training Coordinator ("FTC") of the MDPD South District because the field training program was, in her words, her "number one passion in the agency." *Id.* at ¶ 6. Plaintiff was interviewed by Captain Alan Sanchez and Captain Ryan Howett, both of whom conveyed to her that she had done very well in the interview. *Id.* at ¶ 7.

Ultimately, Major Solis was responsible for selecting the FTC, and he decided to select Plaintiff, though Plaintiff argues that Solis told her that the position was "tentative" and subject to "intense scrutiny." *Id.* at ¶ 8; ECF No. [42] at ¶ 8. Nonetheless, on December 22, 2022, Solis

---

[2] "During the relevant time period, MDPD was a para-military police organization consisting of the following sworn ranks from lowest to highest: Police Officer, Sergeant, Lieutenant, Captain Major, Chief, Assistant Director, and Director." *Id.* at 2 n.2.

informed Plaintiff via memorandum that she was being transferred to the FTC position effective December 26, 2022. ECF No. [37] at ¶ 9.

### b.  Plaintiff's Performance as FTC

In February 2023, Plaintiff received an annual performance evaluation covering the period of January 2022 to January 2023. *Id.* at ¶ 10. In that evaluation, her overall performance was described as "above satisfactory." *Id*. However, Captain Howett noted issues with her managerial skills throughout the evaluation, including "matters concerning personnel with some of her subordinates which Lieutenant Diaz has not brought to my attention, but she should have," as well as "multiple issues with some of her subordinates, which she has not been able to resolve successfully. To the contrary, the methods in which Lieutenant Diaz has attempted to address what she perceived to be a problem, have only inflamed the situation . . . [and] aggravated the relationship between her and these subordinates."[3] *Id*.

On April 14, 2023, Captain Howett and Captain Meyer presented Plaintiff with a Record of Counseling ("ROC") stemming from Plaintiff's failure to timely notify the Professional Compliance Bureau of a March 2023 use of force incident involving a taser. *Id.* at ¶ 11. The ROC stated that, given Plaintiff's role and experience, her failure to report the incident was "an

---

[3] Plaintiff disputes this statement of fact as "misleading" because it fails to provide the context that her performance reviews prior to becoming an FTC had been "above satisfactory" with no comments regarding her "interpersonal skills." ECF No. [42] at ¶ 10. She also points out that it leaves out information regarding the treatment of her male predecessors and subordinates. *Id*.

However, Plaintiff's facts do not actually dispute what Defendants say but instead supplement it with additional information. And to properly place a material fact in dispute, Plaintiff must provide specific "evidentiary citations supporting [its] position . . . ." S.D. FLA. L.R. 56.1(b)(2). Accordingly, where Plaintiff has not properly placed such facts in dispute by providing evidentiary citations to support the dispute, those facts are deemed admitted. *Davis v. Brown*, No. 1:16-CV-00735, 2019 WL 1206431, at *4 (N.D. Ga. Mar. 14, 2019) (applying the Northern District of Georgia's substantially similar local rule and deeming facts admitted where "Plaintiff simply denied Defendant's claims of undisputed facts or stated she 'is without sufficient information to respond' to various paragraphs in Defendants' statement of material fact."). Thus, where Plaintiff nominally "disputes" a statement of fact but merely seeks to supplement it with additional information, the Court will deem the statement of fact admitted.

unacceptable lapse in judgment." *Id*. An ROC is not considered disciplinary action in the MDPD and does not lead to a loss of pay or benefits. *Id.* at ¶ 12.

In August 2023, Plaintiff received another performance review for the July 2022 to July 2023 period. *Id.* at ¶ 13. Again, her overall evaluation was "above satisfactory," but Captain Meyer noted concerns regarding her managerial skills.[4] *Id*.

In July 2024, Plaintiff received a third annual performance review for the July 2023 to July 2024 period. *Id.* at ¶ 14. In that review, Plaintiff's overall evaluation was "satisfactory," but Captain Diaz de Villegas noted that Plaintiff's judgment "need[ed] improvement," describing several incidents that supported that characterization. *Id*. First, the evaluation pointed to Plaintiff's decision to draft and circulate a petition to several Field Training Officers ("FTOs") under her command that called for the removal of Sergeant Maria Bustamante, the FTOs' direct supervisor; Plaintiff admitted to doing so. *Id.* at ¶¶ 15, 16. Second, the evaluation noted that Plaintiff "had been submitting earned Compensatory Time for approval" without telling her supervisor that she had exceeded the maximum allowed hours. *Id.* at ¶ 18. Third, the evaluation noted that, during a counseling session with Captain Diaz de Villegas, Plaintiff had become "disrespectful, argumentative, and insubordinate." *Id.* at ¶ 19. Fourth, the evaluation noted that on several occasions during the rating period, Plaintiff "improperly interpreted and/or failed to apply the proper Departmental policy, procedure, or rule." *Id.* at ¶ 20.[5]

---

[4] Plaintiff characterizes the evaluation as "contain[ing] contradictory statements" and argues that it failed to capture (i) Plaintiff being prohibited from disciplining her subordinate, Sergeant Bustamante, despite documented insubordination, (ii) Plaintiff repeatedly requesting permission to discipline and remove Sergeant Bustamante, and (iii) that Captain Meyer himself suggested that Plaintiff use a petition to remove Sergeant Bustamante. ECF No. [42] at 13. Again, however, these matters—even if true—do not actually dispute the statements of fact presented by Defendants as to what the evaluation said.

[5] Again, Plaintiff does not meaningfully dispute that the July 2024 evaluation occurred or said what Defendants allege it said, but she instead argues that the evaluation contained "multiple factual and policy violations that undermine its legitimacy." ECF No. [42] at ¶¶ 14–20. For instance, Plaintiff alleges, Captain

### c.   Major Solis Removes Plaintiff from the FTC Position

In August 2023, Major Solis informed Plaintiff that she was being removed from the FTC position. *Id.* at ¶ 21. The memorandum stated that the reasons for her removal included "Effectiveness and/or Efficiency of Unit" and "Operational Necessity." *Id.* at ¶ 23.[6]

### d.   Plaintiff's DARs[7] for 5-Days Suspensions

In September 2023, Captain Joseph Meyer initiated a DAR for Plaintiff's "poor judgment and disrespectful behavior towards" Sergeant Bustamante. *Id.* at ¶ 26. The DAR specifically cited Plaintiff's petition, focusing on the fact that Plaintiff failed to obtain chain-of-command approval, "publicly undermined a subordinate's authority, and interfered with unit operations." *Id.* Plaintiff was served with the DAR in November 2023 and was suspended for five days in January 2024 as a result. *Id.*

In early 2024, Captain Alexander Diaz de Villegas took over as Plaintiff's direct supervisor. *Id.* at ¶ 34. In May 2024, Captain Diaz de Villegas initiated a DAR for Plaintiff's "insubordination and violati[on of] the chain of command during a counseling meeting." *Id.* at ¶¶ 35. During the counseling meeting in question, Plaintiff referred to Captain Diaz de Villegas as "sweetie" and further "interrupted the meeting by making a direct call to the MDPD Director

---

Diaz de Villegas failed to provide Plaintiff with 90 days' notice that her performance was "below satisfactory" as required by policy. *Id.* In addition, the evaluation criticized Plaintiff for (i) circulating a petition to remove Sergeant Bustamante without acknowledging that the petition was Captain Meyer's idea and (ii) exceeding compensatory time limits without acknowledging that Plaintiff had a greater workload than was imposed on male FTCs before and after her. *Id.* Furthermore, the evaluation references Plaintiff calling Captain Diaz de Villegas "sweetie" during a May 1, 2024 meeting, but Plaintiff immediately apologized. *Id.* Finally, Plaintiff was never given an opportunity to improve before receiving "needs improvement" ratings, which Plaintiff says violates departmental policy. *Id.*

[6] Plaintiff disputes the stated reasons, characterizing them as "conclusory and pretextual" in light of her exemplary performance as FTC. ECF No. [42] at ¶ 24.

[7] Though the parties do not define the term "DAR," the Court understands the term to refer to a "Disciplinary Action Report." *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1323 (11th Cir. 2020).

despite being told not to do so." *Id.* Plaintiff was served with the DAR in June 2024, resulting in 5 days of suspension. *Id.*

### e.   Plaintiff's Complaints

In March 2023, Plaintiff "sent an email to Captain Howett complaining about her treatment since being selected as FTC, including that she had not been allowed to discipline or remove Sergeant Bustamante from the field training program." *Id.* at ¶ 21. Plaintiff alleges that her email explicitly questioned whether her treatment was "because I was a woman" and complained about her treatment relative to her male predecessor. ECF No. [42] at ¶ 21.[8]

In September 2023, Plaintiff submitted a written complaint of discrimination to the Miami-Dade County Office of Human Rights and Fair Employment Practices ("HRFEP"). ECF No. [37] at ¶ 30. She then filed the complaint with the MDPD Professional Compliance Bureau ("PCB"). *Id.* In the 26-page complaint, she alleged discrimination and retaliation based on race and gender. *Id.* at ¶ 31. She also claimed "exclusion from privileges, heavier workload, denial of support, and threats of removal if she continued to complain." *Id.* She requested reinstatement as FTC, back pay, discipline for those she accused, and protection from further retaliation. *Id.* The PCB closed the investigation of Plaintiff's complaint, finding no violation of law or policy and electing to take no further action. *Id.* at ¶ 33.[9]

### f.   Plaintiff's EEOC Charge

In July 2024, Plaintiff failed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 40.

---

[8] The Court is unable to locate the precise statement, "because I was a woman" in the email. However, Plaintiff does ask, "Is the fact that I am a female supervisor the reason that you feel subordinates do not need to be respectful towards me . . . ?""ECF No. [37-11] at 3.

[9] Plaintiff admits that PCB closed the investigation but argues that this represented a "cursory dismissal" constituting retaliation. ECF No. [42] at ¶ 33.

Case No. 25-cv-20795-BLOOM/Elfenbein

### g. Overall Timeline

The Court provides an abbreviated timeline of the events relevant to this case. For each event, it is undisputed that the actions occurred, but the parties dispute the implications of each occurrence. The relevant events are as follows:

- December 26, 2022: Plaintiff begins serving as FTC, *id.* at ¶ 9;
- February 2023: Plaintiff receives an annual performance evaluation of "above satisfactory" for the period January 2022 to January 2023, *id.* at ¶ 10;
- March 10, 2023: Plaintiff sends her initial complaint via email to Captain Howett, *id.* at ¶ 21;
- April 14, 2023: Captain Howett and Captain Meyer present Plaintiff with a Record of Counseling, *id.* at ¶ 11;
- August 2023: Plaintiff receives an annual performance evaluation of "above satisfactory" for the period July 2022 to July 2023, *id.* at ¶ 13;
- August 21, 2023: Plaintiff circulates a petition calling for Sergeant Bustamante's removal, ECF No. [37-10];
- August 30, 2023: Major Solis informs Plaintiff that she is being removed from her FTC position, ECF No. [37] at ¶ 23;
- August 30, 2023: Plaintiff brings her complaints to Chief Beato-Dominguez, ECF No. [42] at ¶¶ 41–42;
- September 7, 2023: Captain Meyer initiates a DAR, resulting in a 5-day suspension for Plaintiff, ECF No. [37] at ¶ 26;
- September 11–13, 2023: Plaintiff files her HRFEP/PCB complaint, *id.* at ¶ 30;
- April 24, 2024: Plaintiff brings her complaints to Chief Garcia, ECF No. [42] at ¶¶ 14–20;
- April 24, 2024: A second Record of Counseling is issued, *id.* at ¶¶ 41–42;
- May 1, 2024: Plaintiff calls Captain Diaz de Villegas "sweetie" during a meeting, *id.* at 14–20;
- May 3, 2024: Captain Diaz de Villegas initiates a DAR, resulting in another 5-day suspension for Plaintiff, ECF No. [37] at ¶ 35;
- July 18, 2024: Plaintiff files a Charge of Discrimination with the EEOC, *id.* at ¶ 40;
- July 23, 2024: Plaintiff receives an annual performance evaluation of "satisfactory" for the period July 2023 to July 2024, *id.* at ¶ 14; ECF No. [42] at ¶ 44.

### B. Disputed Facts

Plaintiff provides a list of additional "material facts in dispute." ECF No. [42] at 10. Some of these "facts" are not factual matters, but attempts to shoehorn legal conclusions into a statement of fact. For instance, Plaintiff attempts to provide "evidence of pretext" and a "pattern and practice

of discrimination," *id.* at 12, both of which implicate legal inquiry rather than purely factual inquiry. Thus, the Court only addresses those matters that can be described as factual in nature.

First, Plaintiff states that she was assigned to a disparate workload. *Id*. at 10. Specifically, she alleges that she "was the only FTC in the entire MDPD who was required to serve simultaneously as platoon commander for three field training squads" while "handling payroll, uses of force, traces, crashes, and yearly/monthly evaluations for all three squads." *Id*. Indeed, she alleges that neither her male predecessor nor her male successor were assigned such "dual responsibilities." *Id*. In addition, Plaintiff alleges that she "was assigned to additional labor-intensive special projects . . . not assigned to other FTCs." *Id*. According to Plaintiff, she complained to Captain Howett and Major Solis about the excessive workload; in response, Major Solis "threatened to remove her if she sent another email." *Id.* at 11.

Second, Plaintiff points to other individuals whom she claims were treated better than she was treated. *Id*. Plaintiff points first to Christian Campo, a Hispanic male who was appointed FTC despite having questionable or insufficient qualifications. *Id*. Plaintiff alleges that Campo was permitted to remove Segreant Bustamante from her position for the same complaints Plaintiff had made, despite Plaintiff not being allowed to do so. *Id*. Plaintiff then references Segreant Bustamante's sworn statement in which the sergeant admitted "that she refused to follow Plaintiff's orders to sign orientation checklists." *Id*. In response to this insubordination, Segreant Bustamante received only informal counseling, whereas Plaintiff received a 5-day suspension for alleged insubordination. *Id*. Finally, Plaintiff references Desiree Serrano, a Hispanic female, who "was disciplined for insubordination with only a Record of Counseling," while, again, Plaintiff received two 5-day suspensions. *Id*.

Third, Plaintiff turns to her relative performance. She notes that Lieutenant Grubbs, her predecessor FTC, left the program eight months behind. *Id.* at 12. Then, during her time as FTC, Plaintiff brought the program from eight months behind to current. *Id.* From there, Lieutenant Campo, Plaintiff's replacement, allowed the program to fall over ten months behind "despite having fewer responsibilities" than Plaintiff. *Id.* Still, only Plaintiff was "removed and publicly demoted back to uniform patrol with a 20% pay cut." *Id.* According to Plaintiff, even Sergeant Bustamante, upon removal, was allowed to transfer to a "specialized unit . . . rather than being publicly demoted like Plaintiff." *Id.* Furthermore, Plaintiff points out that she "had no history of turning in late work or being counseled for such issues in 24 years of service until Captain Diaz de Villegas arrived." *Id.* at 13.

Plaintiff raises a few additional factual allegations that warrant mentioning. Plaintiff references her own testimony, in which she described that White, non-Hispanic females make up only 3% of the MDPD. *Id.* at 12. In her testimony, she also alleged that she told Captain Diaz de Villegas and Major Solis about her EEOC complaint before the second DAR was initiated. *Id.* at 13. Plaintiff further alleges that Captain Diaz de Villegas forward her "discrimination complaints emails to Major Solis or cc'd him." *Id.*

## II. LEGAL STANDARD

### A. Rule 56(a) Summary Judgment Standard

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* FED. R. CIV. P. 56(c). "A factual dispute is 'material' if it would affect the outcome of the suit under the governing law, and 'genuine' if a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee*

10

*Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Liberty Lobby, Inc.*, 477 U.S. at 24–48).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant." (citation omitted)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Liberty Lobby, Inc.*, 477 U.S. at 252.

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294,

11

1296 (11th Cir. 1983). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

## III.   DISCUSSION

Defendants argue they are entitled to summary judgment on all claims because:

(1) the majority of Plaintiff's allegations before September 22, 2023, including her removal from the Field Training Coordinator position on September 18, 2023, are time-barred due to Plaintiff's failure to exhaust administrative remedies; (2) Major Solis is entitled to qualified immunity on Count VII because Plaintiff has failed to allege any legal basis for a § 1983 retaliation claim against him individually; (3) Plaintiff has failed to establish a *prima facie* case of gender or race discrimination, or retaliation; and (4) Plaintiff fails to show that the County's legitimate, nondiscriminatory, non-retaliatory, reasons for its employment actions were a pretext for discrimination or retaliation.

ECF No. [38] at 2. Plaintiff responds, contending that her evidence, "viewed collectively and in the light most favorable to her, create[s] a triable issue whether Defendants discriminated and retaliated against her." ECF No. [43] at 21. According to Plaintiff, she has "presented overwhelming temporal proximity, direct evidence of retaliatory animus, powerful comparator evidence, pattern evidence, statistical evidence, and pretext evidence." *Id*.

As an initial matter, the Court notes that claims under Title VII and the FCRA are analyzed under the same burden-shifting framework. *Gamboa v. Am. Airlines*, 170 F. App'x 610, 612 (11th Cir. 2006) (citing *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). "Because the same *prima facie* case and burden-shifting mechanisms apply to Title VII and FCRA discrimination claims, decisions construing Title VII are applicable to [Plaintiff's] claims." *Id.* (citing *Harper*, 139 F.3d at 1387).

### A. Administrative Exhaustion

> As a prerequisite to filing both a Title VII and a FCRA action, a plaintiff must exhaust all administrative remedies by filing a timely charge with the appropriate agency. The scope of a plaintiff's judicial complaint under Title VII and the FCRA is limited by the scope of any administrative investigation that may reasonably arise from the plaintiff's initial charge of discrimination.

*Bridges v. Standard Pacific of Tampa GP, Inc.*, 2007 WL 177688, at *1 (M.D. Fla. Jan. 19, 2007) (citing *Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277, 1279–80 (11th Cir. 2004); *Harper*, 139 F.3d at 1387 (11th Cir. 1998)). In Florida, a plaintiff must file an administrative charge of discrimination within 300 days of the last discriminatory act. *See* § 2000e-5(e)(1); *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004) ("For a charge to be timely in Florida, a deferral state, it must be filed not more than 300 days after the alleged unlawful employment practice occurred."); E.*E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002) (same).

Where the claim involves discrete acts of discrimination—as opposed to, say, a hostile work environment claim—such acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Discrete acts are "easy to identify" and include "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114. "The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed." *Id.* at 113. In effect, a Plaintiff alleging discrete discriminatory acts is limited to "those acts that occurred 300 says before . . . the day that [the plaintiff] filed his charge." *Id.* at 114.

Defendants argue that because Plaintiff filed her EEOC Charge on July 18, 2024, Plaintiff is time-barred from bringing any claims regarding conduct that occurred prior to September 22, 2023—300 days before she filed her EEOC charge. ECF No. [38] at 3. Notwithstanding this, Plaintiff brings claims stretching as far back as December 26, 2022, including

> (1) being required to work harder than other FTCs and being denied the ability to discipline a subordinate employee from December 26, 2022 through May of 2023; (2) being issued a record of counseling on March 30, 2023; (3) receiving a 5-days suspension that was prepared on September 7, 2023; and (4) being removed from her FTC position on September 18, 2023.

*Id.* In effect, Defendants argue they are entitled to summary judgment on all acts before September 23, 2023 and after July 15, 2024—the date that Plaintiff confirmed represented the latest act of discrimination—because those claims are "outside the scope of [Plaintiff's] EEOC Charge, time-barred, and not properly exhausted." *Id.*

Plaintiff raises four reasons why her claims are not time-barred. First, she states that she "initiated her EEOC inquiry on January 29, 2024." ECF No. [43] at 4. However, the EEOC's requirement that those seeking to file a charge fill out online paperwork and complete an interview delayed the process. *Id.* The earliest interview appointment was July 9, 2024, delaying Plaintiff's ability to file her Charge. *Id.* Plaintiff notes that the EEOC determined that Plaintiff's Charge was timely and issued a right to sue without time-barring any claims. *Id.* Plaintiff claims this determination is entitled to deference. *Id.* at 5.

Second, Plaintiff argues the continuing violation doctrine applies, as the time-barred acts are "part of an ongoing pattern" of retaliation. *Id.* (citing *Morgan*, 536 U.S. at 115–17). Plaintiff argues that her evidence shows "serial violation[s]." *Id.* (citing *Morgan*, 536 U.S. at 115). Indeed, Plaintiff argues the discrimination is ongoing, citing to testimony regarding a third DAR issued November 13, 2025. *Id.* at 6.

Third, Plaintiff argues time-barred acts are admissible as background evidence. *Id*. She argues that pre-September 2023 events show Plaintiff's disproportionate workload, heightened scrutiny as an FTC, Major Solis' threat to remove Plaintiff for complaining, and disparate treatment of Lieutenants Campo and Grubbs. *Id*.

Fourth, Plaintiff argues that the September 18, 2023 removal, rather than being a "discrete act," is part of an ongoing course of retaliation insofar as its effects remain. *Id*. She points to Plaintiff's pay remaining 20% lower than pre-removal, Plaintiff's continuing loss of specialized assignment, and subsequent evaluations criticizing Plaintiff's work.

Plaintiff also argues equitable tolling applies, because Plaintiff reasonably relied on EEOC guidance, and "[c]ourts hold that reasonable reliance on administrative agency guidance warrants equitable tolling." *Id*. at 7 (citing *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 124 (1988)). The EEOC indicated to Plaintiff that she had until October 15, 2024 to file a charge, and Plaintiff understood that to mean there would be no prejudice to her rights if she filed by that time. *Id*.

Finally, as to her FCRA claims, Plaintiff points out that her "co-filed FCRA charge was timely under Florida's one-year statute." *Id*. The County had full notice of the allegations, and "[w]here state law provides a longer limitations period and the plaintiff timely exhausts, federal courts permit proceeding on timely state-law claims." *Id*.

In their Reply, Defendants reiterate their argument that "Plaintiff is barred from suing on any allegations of conduct that occurred before September 22, 2023, because they took place more than 300 days before Plaintiff filed her EEOC Charge on July 18, 2024." ECF No. [51] at 3. They also respond directly to Plaintiff's arguments.

First, they argue that initiating an EEOC inquiry and completing online forms are not equivalent to actually filing an EEOC charge. *Id.* (citing *Francois v. Miami-Dade County*, 432 Fed. Appx. 819, 821–22 (11th Cir. 2011); *Pijnenburg v. West Georgia Health Sys., Inc.*, 255 F.3d 1304, 1305–06 (11th Cir. 2001)). Indeed, Defendants point out that prior case law supports that an intake questionnaire does not satisfy Title VII's timely filing requirement. *Id.* at 4 (collecting cases). Here, Plaintiff merely opened an online inquiry on January 29, 2024, and the website indicated that submitting an inquiry is different from filing a charge of discrimination. *Id*. at 4–5. The intake questionnaire was not verified or signed under penalty of perjury, and Plaintiff later submitted a formal EEOC Charge, indicating that she could not have believed her inquiry was functioning as a charge. *Id.* at 5. Furthermore, the EEOC did not send notice of the Charge or begin its investigation until after Plaintiff filed her formal Charge. *Id*. at 5–6.

Replying to Plaintiff's second, third, and fourth arguments, Defendants refute Plaintiff's understanding of *Morgan*, 536 U.S. 101. *Id*. at 6. Defendants argue that *Morgan* does not save her claims under the "continuing violation doctrine," does not permit her time-barred acts as "background evidence," and does not allow consideration of her removal from the FTC position as part of a "continuing course of retaliation." *Id*. Those concepts do not apply to discrete discriminatory or retaliatory acts, but instead apply to hostile work environment claims, which Plaintiff does not allege. *Id*.

Replying to Plaintiff's fifth argument, Defendants argue Plaintiff's reliance on EEOC guidance regarding the October 15, 2024 deadline to file her charge is unreasonable, as she fails to support her position. *Id.* at 7.

Replying to Plaintiff's sixth argument that her FCRA claims can survive under Florida's one-year statute of limitations, Defendants point out that Plaintiff offers no "legal authority or

support." *Id*. And even if the FCRA claims were not time-barred, summary judgment would still be warranted for failure to create a triable issue of unlawful discrimination or retaliation. *Id*.

As an initial matter, beginning an online inquiry and completing intake forms are not tantamount to actually filing an EEOC charge. "[A]s a general matter an intake questionnaire is not intended to function as a charge." *Pijnenburg v. West Georgia Health Sys., Inc.*, 255 F.3d 1304, 1305 (11th Cir. 2001). An intake questionnaire *can* be "considered charge for the purpose of satisfying the statute of limitations where: the questionnaire was verified; the questionnaire contained the basic information required by a charge; and the form's language could have been interpreted to represent a charge." *Francois v. Miami Dade Cnty., Port of Miami*, 432 F. App'x 819, 822 (11th Cir. 2011) (citing *Wilkerson v. Grinnell Corporation*, 270 F.3d 1314, 1320–21 (11th Cir. 2001). But the majority of cases have found that an intake questionnaire does not count as a charge for purposes of assessing timeliness. See, e.g., *Pijnenburg*, 255 F.3d at 1306 (holding that the plaintiff's unverified intake questionnaire did not satisfy Title VII's timely filing requirement, as it did not notify her employer of her claim or initiate the EEOC investigation); *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1241 (11th Cir. 2004) (holding that a questionnaire did not satisfy the timely filing requirement because the plaintiff "clearly understood the intake questionnaire was not a charge because he later filed a timely charge" and "the questionnaire form itself did not suggest it was a charge"); *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 402 (holding that "if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.")[10]; *E.E.O.C. v. Summer Classics, Inc.*, 471 F. App'x 868, 872 (11th

---

[10] Though the Eleventh Circuit, in reaching its decision in *Holowecki*, referenced deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–45 (1984), which has since been overruled, the Eleventh Circuit made clear that its position would hold under *Skidmore* deference as well. 552 U.S. at 399 (citing *Bragdon v. Abbott*, 524 U.S. 624, 642 (1998)). *Skidmore* remains good law. *Loper*

Cir. 2012) (holding that an intake questionnaire was not a charge where "[t]he only reasonable reading of [the] questionnaire is as a request for information and answers about [the plaintiff's] rights, rather than a demand for agency enforcement." (citing *Holowecki*, 552 U.S. at 400–01)).

Guided by the reasoning in these Eleventh Circuit and Supreme Court cases, the Court assesses whether Plaintiff's initial EEOC inquiry or intake forms constitute a Charge by considering whether (i) Plaintiff's statements request agency action, (ii) the forms suggest they are a charge, (iii) the forms notified the employer of the allegations, (iv) the forms initiated an EEOC investigation, and (v) the forms were verified, and (vi) Plaintiff later filed a formal charge, indicating that she did not believe these forms constituted a charge. All of those factors counsel in favor of one conclusion: the initial forms Plaintiff filled out do not constitute a charge, and as a result, all allegations before September 22, 2023 are technically time-barred.

First, Plaintiff does not argue—and the Court does not find on its own review of the record—any evidence that Plaintiff asked the agency to take action on her initial forms. *See generally* ECF No. [44-1]. In addition, as Defendants indicate, the second page of the EEOC inquiry form clearly states, "**SUBMITTING AN INQUIRY IS DIFFERENT FROM FILING A CHARGE OF DISCRIMINATION.**" U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *Open an Inquiry/Case*, *available at* https://publicportal.eeoc.gov/Portal/Forms/NewEditForm.aspx?templateId=160&userKe (last accessed March 21, 2026).[11] The inquiry form states that a "charge of discrimination is a signed statement asserting that an organization engaged in employment discrimination." *Id*. Far from suggesting that they are a charge, the inquiry forms

---

*Bright Enters. v. Raimondo*, 603 U.S. 369, 374 (2024). Thus, the Court cites to this decision.

[11] The Court may take judicial notice of government websites. *See* Fed. R. Evid. 201(b)(2); *Coastal Wellness Centers, inc. v. Progressive American Insurance Co.*, 309 F. Supp. 3d 1216 n. 4 (S.D. Fla. 2018); *Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*, 2017 WL 3503371, at *7 (S.D. Fla. Aug. 15, 2017) (citing *Gent v. CUNA Mutual Ins. Society*, 611 F.3d 79, 84 n.5 (1st Cir. 2010).

expressly state that they are not. Furthermore, there is no indication in the record that the forms notified the Defendant of the allegations or initiated an EEOC investigation. The initial forms were unsigned and unverified. ECF No. [44-1] at 43–46. And Plaintiff later filed a formal EEOC Charge, indicating that she did not believe the initial forms constituted a charge. *Id.* at 6. Indeed, Plaintiff's Declaration indicates that the EEOC made her "wait almost six months" to "'file' [her] charge," ECF No. [43-1] at 52, indicating that she knew the forms prior to that did not constitute a charge.

Many of Plaintiff's remaining arguments are unavailing. Plaintiff argues that the "continuing violation doctrine" applies pursuant to *Morgan*, because the pattern she presents represents a "serial violation." ECF No. [43] at 5. But Plaintiff misunderstands *Morgan*. The Supreme Court in *Morgan* explicitly *rejected* the "serial violation" formulation of the "continuing violation doctrine," stating:

> The Court of Appeals applied the continuing violations doctrine to what it termed "serial violations," holding that so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability. With respect to this holding, therefore, we reverse.

*Morgan*, 536 U.S. at 114 (internal citation omitted). The Court was clear that, in cases involving "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire," each adverse employment decision "constitutes a separate actionable 'unlawful employment practice.'" *Id*. The plaintiff could therefore "only file a charge to cover discrete acts that 'occurred' within the appropriate time period," and "only those acts that occurred 300 days before . . . the day that [the plaintiff] filed his charge[] are actionable." *Id*. The same is true here. Even the acts Plaintiff cites as part of a "pattern" of discriminatory and retaliatory treatment are  discrete acts. She cites the ROCs, the DARs, and her removal from her FTC position. ECF No. [43] at 5. Those are all plainly

discrete acts, and  Plaintiff is technically only able to file claims relating to those after September 22, 2023.

Plaintiff also argues that her September 18, 2023 removal is part of a continuing course of retaliation. *Id.* at 6. This appears to be a restatement of Plaintiff's "continuing violation doctrine" argument, which the Court already addressed. Plaintiff points out that she suffered an ongoing 20% pay reduction after her demotion, continuing loss of her FTC assignment, and subsequent critical evaluations criticizing her for the removal. *Id*. However, none of those examples changes the Court's analysis above. The Supreme Court in *Morgan* was clear that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" do not fall under the ambit of the "continuing violations doctrine." 536 U.S. at 114 (2002). Plaintiff's demotion is precisely such an act. That she continues to feel the effects of the act does not change that the act itself was discrete and definitively "occurred" on September 18, 2023.

However, this is where the Court's analysis takes a different turn. Plaintiff argues that equitable tolling applies because Diaz relied on EEOC guidance that she "had nothing to worry about." ECF No. [43] at 7. Though she does not provide a citation, Plaintiff appears to be referring to her Declaration. ECF No. [43-1] at 52. The Eleventh Circuit has recognized "three distinct situations in which the Title VII limitation period may be equitably tolled," including, as relevant here, "when the EEOC misleads a complainant about the nature of his rights under Title VII." *Jones v. Wynne*, 266 F. App'x 903, 906 (11th Cir. 2008). The Eleventh Circuit Court of Appeals has also noted that "equitable tolling may be appropriate when a plaintiff has been 'lulled into inaction by . . . state or federal agencies' or 'if a plaintiff is actively misled.'" *Miller v. Marsh*, 766 F.2d 490, 493 (11th Cir.1985) (quoting *Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir. 1984)). Nonetheless, equitable tolling "is an extraordinary remedy which should be extended only

20

sparingly." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993) (citation omitted). And the burden falls on the plaintiff to show that equitable tolling is warranted. *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 661 (11th Cir. 1993).

The Court begins by reproducing the portion of Plaintiff's Declaration in which she describes her interaction with the EEOC.

> I expressed my concerns to the EEOC that I did not want to miss any deadlines and that this case was very important to me. I was advised by the EEOC supervisor and investigator that I had nothing to worry about, especially because the illegal discrimination and retaliation was on-going.

ECF No. [43-1] at 52. Based on this statement and taking the facts in the light most favorable to Plaintiff, the Court shares Plaintiff's view that she was misled. It is true that, in cases involving "ongoing harassment," so long as a charge relating to the last discriminatory act is timely filed, the EEOC will consider *all* claims, including those outside of the 300-day window. U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *Time Limits for Filing a Charge*, *available at* https://www.eeoc.gov/time-limits-filing-charge (last accessed March 21, 2026). But Plaintiff's case is not one of ongoing harassment; instead, it is a case involving discrete allegedly discriminatory events. In such cases, the 300-day deadline "usually applies to each event," meaning each discriminatory event must be timely to be considered. *Id.* So, it appears to the Court that Plaintiff was misled. Defendants do not meaningfully rebut Plaintiff's argument about being misled. *See* ECF No. [51] at 7. Thus, equitable tolling applies to Plaintiff's claims, allowing the Court to consider them. Because the Court finds that Plaintiff's claims are not time-barred, the Court does not reach Plaintiff's assertion that her FCRA claims survive under Florida's statute of limitations. ECF No. [43] at 7–8.

Case No. 25-cv-20795-BLOOM/Elfenbein

### B. Qualified Immunity as to Major Solis with Respect to Plaintiff's § 1983 Claim

Plaintiff brings a claim for retaliation under 42 U.S.C. § 1983. ECF No. [15] at ¶ 60. Section 1983 states that "[e]very person who . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

In their Motion, Defendants argue Major Solis is entitled to qualified immunity on Plaintiff's § 1983 claim "because Plaintiff fails to identify any constitutional or statutory right other than those covered by Title VII." ECF No. [38] at 4. According to Defendants, in order to proceed on her § 1983 claim, "Plaintiff must identify the substantive federal right she is trying to enforce *other than* those covered by Title VII." *Id*. (citing *Harris v. Sch. Bd. of Broward Cty.*, No. 11-62604-CIV, 2012 WL 882610, at *4–5 (S.D. Fla. Mar. 15, 2012)).

Plaintiff responds that her § 1983 claim is predicated on First Amendment retaliation. ECF No. [43] at 9. She argues that Solis' explicit threat to remove her from her FTC position for writing another complaint email was "an objectively unreasonable constitutional violation" and not protected by qualified immunity. *Id.* at 9–10.

Defendants reply that Plaintiff's claim should be dismissed "because First Amendment retaliation was never pled as a theory of liability in the Amended Complaint and Defendants have not received notice nor an opportunity to develop a defense." ECF No. [51] at 8. They argue that in the Eleventh Circuit, parties may not raise new claims or theories of liability through summary judgment briefing. *Id*. (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *Iraola & CIA, S.A. v. Kimberly–Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003)). Moreover, Defendants contend that any First Amendment retaliation claim is subject to dismissal on the ground that the speech at issue did not raise an issue of public concern, but instead, primarily

furthered Plaintiff's own interests. *Id.* at 9–10. Indeed, Defendants argue Plaintiff's speech involved nothing more than "private employee grievances." *Id.* at 10 (quoting *Watkins v. Bowden*, 105 F.3d 1344, 1353 (11th Cir. 1997)).

The Court agrees with Defendant that Plaintiff's Amended Complaint never implicated the First Amendment, and Plaintiff should not be allowed—at this late stage—to refashion her pleading through summary judgment briefing. See, e.g., *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment. (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996))); *Austin v. City of Montgomery*, 196 F. App'x 747, 753 (11th Cir. 2006) (claim raised for first time in plaintiff's response to defendant's motion for summary judgment is not properly before the district court). Plaintiff clearly implied that her § 1983 retaliation claim was based on a violation of rights established by Title VII or the FCRA. *See* ECF No. [15] at ¶ 4 ("This is an action for damages for unlawful discrimination of Plaintiff . . . on the basis of her race and retaliation in violation of 42 U.S.C. § 1983 [] against the individual defendant Solis."). And what is unmistakably clear is that the First Amendment represents an entirely "new theory of liability," which cannot be raised for the first time in summary judgment briefing. *Cacciamani v. Target Corp.*, 622 F. App'x 800, 804–05 (11th Cir. 2015). The Court turns to the core qualified immunity analysis at issue. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir.2003). The process for analyzing a defense of qualified immunity is well established:

> To be eligible for qualified immunity, the official must first establish that he was performing a "discretionary function" at the time the alleged violation of federal

law occurred. Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity. In order to demonstrate that the official is not entitled to qualified immunity, the plaintiff must show two things: (1) that the defendant has committed a [statutory] violation and (2) that the [statutory] right the defendant violated was "clearly established" at the time he did it.

*Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).

First, the Court must determine whether Major Solis was performing a "discretionary function" at the time the alleged violation of federal law occurred. "To determine whether an official was engaged in a discretionary function, we consider whether the acts the official undertook 'are of a type that fell within the employee's job responsibilities.'" *Id.* (quoting *Holloman v. Harland*, 370 F.3d 1252, 1263 (11th Cir.2004)). Major Solis was undisputedly in charge of Plaintiff's promotion and demotion. ECF No. [42] at ¶¶ 8, 23. Therefore, Major Solis was engaged in a discretionary function for purposes of qualified immunity.

The Court temporarily bypasses the question of whether a constitutional violation occurred and turns instead to the question of whether the statutory right implicated by this case was "clearly established." Specifically, Major Solis is only entitled to qualified immunity if his conduct did not violate "clearly established statutory rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

A right is clearly established if, in light of preexisting law, the unlawfulness of the official's conduct is "apparent" . . . . This standard does not require that the specific conduct in question was previously found to be unlawful; the state of the law need only give an offic[ial] "fair warning" that his conduct is unlawful.

*Cooper v. Dillon*, 403 F.3d 1208, 1220 (11th Cir. 2005) (citations omitted).

Here, the rights allegedly violated by Major Solis were "clearly established" at the time of Major Solis' actions and, therefore, he is not entitled to qualified immunity. It is "patently obvious" that intentional, race-based discrimination in public employment is prohibited. *See, e.g., Smith v.*

24

*Lomax*, 45 F.3d 402, 407 (11th Cir.1995). As the Eleventh Circuit has held, "the right to be free from racial discrimination in the public workplace [is] a clearly established constitutional right of which a reasonable official would have known." *McMillan v. DeKalb County*, 211 F. App'x 821, 823–24 (11th Cir. 2006). The same is true for gender-based discrimination. *Stuart v. Jefferson Cnty. Dep't of Hum. Res.*, 152 F. App'x 798, 803 n.6 (11th Cir. 2005) ("[G]ender discrimination was a clearly established violation of the law at the time of the alleged violations." (citing *Williams v. Consolidated City of Jacksonville*, 341 F.3d 1261, 1270–71 (11th Cir. 2003))). And the same is true for retaliation based on a Title VII complaint—that is, it was clearly established that retaliation for a protected complaint was proscribed by law. *Wu v. Thomas*, 996 F.2d 271, 273 (11th Cir. 1993) ("Our cases also clearly established that no employer could fire, demote, refuse to hire, or otherwise tangibly injure an employee for pursuing a Title VII action." (collecting cases)).

Thus, Major Solis is not entitled to qualified immunity in this case. Nonetheless, the § 1983 claim will rise or fall on Plaintiff's ability to prove Title VII or FCRA discrimination or harassment. The Court turns to those matters in the next section.

### C. Gender and Race Discrimination Claims

Plaintiff alleges gender and race discrimination claims in Counts I, II, III, and IV (as well as, by extension, in her Count VII § 1983 claim). ECF No. [15]. Where, as here, a plaintiff claims discrimination based on circumstantial evidence, the plaintiff can establish her claims by relying on either the "*McDonnell Douglas* burden shifting paradigm or through a convincing mosaic of evidence sufficient for a jury to infer discrimination." *Session v. Deloach*, No. 3:23-CV-170-TJC-PDB, 2025 WL 3763898, at *5 (M.D. Fla. Dec. 30, 2025) (citing *Ismael v. Roundtree*, 161 F.4th 752, 760 (11th Cir. 2025)). This is true for claims brought under Title VII and the FCRA. *Nash v. Palm Beach Cnty. Sch. Dist.*, 469 F. App'x 712, 713 (11th Cir. 2012) ("Employment claims brought under . . . the FCRA involve the same analysis as Title VII disparate treatment claims."

(citations omitted)). Plaintiff argues that her disparate treatment claims survive summary judgment under both approaches. *See* ECF No. [43] at 3.

The Court begins by describing the *McDonnell Douglas* burden-shifting paradigm.

> Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case. If the plaintiff satisfies this burden, the burden of production then shifts to her employer to articulate a legitimate, nondiscriminatory reason for its actions. If the employer proffers even one such reason, the burden then shifts back to the plaintiff, who must show that the reason given by the employer was a mere pretext for discrimination.

*Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1338 (11th Cir. 2022) (internal citations omitted).

A plaintiff's burden to establish a *prima facie* case "is not onerous," and Plaintiff must simply establish discriminatory treatment by a preponderance of the evidence. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). Plaintiff does so by establishing that: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees outside her class more favorably; and (4) she was qualified to do the job. *Howard v. Wilkie*, 421 F. Supp. 3d 1279, 1284 (N.D. Ala. 2019) (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).

From there, "[t]he employer's initial showing, just as the plaintiff's, is a low bar to hurdle." *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015). At this next step, "[t]he burden placed on the employer is only an evidentiary one: a burden of production that 'can involve no credibility assessment.'" *Id.* at 1336 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

To establish pretext—at the final step—the plaintiff "must present 'significant probative evidence[.]'" *Owens*, 52 F.4th at 1338 (quoting *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996)). At that stage, "the inquiry 'proceeds to a new level of specificity,' in which

the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255–65 (1981)). More specifically, "[i]f a jury reasonably could infer from the evidence presented that the employer's legitimate justification is pretextual, the question becomes whether the evidence, considered in the light most favorable to the plaintiff, yields the reasonable inference that the employer engaged in the alleged discrimination." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326 (11th Cir. 2011). To establish pretext, a plaintiff can reveal "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. Ala. State Tenure Comm'n,* 405 F.3d 1276, 1289 (11th Cir. 2005) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

But "[s]atisfying the *McDonnell-Douglas* framework is not essential for a plaintiff to survive summary judgment," and therefore, summary judgment should not be granted simply because the plaintiff is unable to show pretext for the defendant's purportedly non-discriminatory conduct. *Gaskin v. Healthtrust Workforce Sols.*, No. 0:24-CV-60431, 2026 WL 32786, at *7 (S.D. Fla. Jan. 6, 2026) (citing *Reeves v. Columbus Consol. Gov't*, No. 23-11463, 2024 WL 33903, at *2 (11th Cir. Jan. 3, 2024)). Instead, a plaintiff may also survive summary judgment by "present[ing] a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Gaskin*, 2026 WL 32786, at *7; *see also Ismael*, 161 F.4th at 761 ("Our precedent, then, makes clear that a plaintiff who cannot establish the *McDonnell Douglas prima facie* case is entitled to a full review under the convincing mosaic standard."). The convincing mosaic inquiry allows a court to look beyond the *prima facie* case

where a plaintiff points to evidence of, "among other things, (1) suspicious timing or ambiguous statements, (2) systematically better treatment of similarly situated employees, and (3) pretext." *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1342 (11th Cir. 2023); *see also Hillman v. Remain at Home Senior Care*, No. CV 124-096, 2026 WL 497842, at *6 (S.D. Ga. Feb. 23, 2026).

Although the convincing mosaic standard allows the Court to consider less traditional circumstantial evidence, the ultimate inquiry is the same under either the *McDonnell Douglas* or convincing mosaic framework—looking at the evidence in the light most favorable to the plaintiff, is there sufficient circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker[?]" *Hillman*, 2026 WL 497842, at *6 (citing *Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1020 (11th Cir. 2023); *Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022)).

Focusing first on the *McDonnell Douglas* standard, Defendants argue they are entitled to summary judgment on Plaintiff's gender and race discrimination claim. ECF No. [38] at 5. They do not dispute that Plaintiff is a member of two protected classes (i.e., White and female) and that she was minimally qualified to be a police lieutenant—in that regard, they admit that she satisfies the first two *McDonnell Douglas* prongs. *Id.* However, they argue that, as to the third prong, Plaintiff's claims fail because the alleged conduct—namely, "working harder than other Field Training Coordinators, being prohibited from disciplining a subordinate, receiving records of counseling, and negative statements in a performance evaluation"—do not constitute "adverse employment actions." *Id.* And as to the fourth prong, they claim Plaintiff has failed to point to a similarly situated comparator who was treated more favorably. *Id.*

Focusing on the third prong, Defendants assert that, within the permitted time period, the alleged conduct includes "(1) the preparation of a record of counseling on April 24, 2024 []; and

(2) her second 5-days suspension initiated on May 3, 2024 [].” *Id.* at 6. Defendants argue that only the 5-day suspension resulted in a loss of pay or benefits, so only that alleged conduct may be considered. *Id.*

From there, turning to the fourth prong, Defendants argue Plaintiff has failed to point to “a single lieutenant outside her race and gender within MDPD who worked for the same supervisors as Plaintiff, during the same time frame, and who had the same type of performance issues and ongoing disruptive behaviors as Plaintiff [], and who was not disciplined appropriately.” *Id.* at 7. They cite concerns regarding Plaintiff's managerial skills and issues with subordinates, ECF No. [37] at ¶¶ 10, 13; a use of force incident involving a taser, *id.* at ¶ 11; concerns regarding Plaintiff's “judgment” stemming from the petition incident, *id.* at ¶ 14; Plaintiff improperly submitting for excessive Compensatory Time, *id.* at ¶ 18; Plaintiff being “disrespectful, argumentative, and insubordinate” toward Captain Diaz de Villegas and “inappropriately” calling the director, *id.* at ¶ 19; and Plaintiff's failure to properly interpret or apply the “proper Departmental policy, procedure, or rule,” *id.* at ¶ 20. Defendants point out that Plaintiff admitted that Jenna Parmentor— a White, female sergeant—“received special privileges and favorable treatment.” ECF No. [38] at 7. This, Defendants argue, demonstrates that Defendants held no discriminatory animus towards White females. *Id.* Because Plaintiff has not shown a sufficient comparator, she cannot make out the fourth prong of her *prima facie* case for race discrimination. *Id.* at 8.

Turning to the convincing mosaic approach, Defendants argue that “the record reveals no other evidence 'that would allow a jury to infer intentional discrimination by the decisionmaker.'” *Id.* (citing *Herron-Williams v. Alabama State Univ.*, No. 18-10875, 2020 WL 599301, at *6–7 (11th Cir. Feb. 7, 2020)). Defendants point to several pieces of evidence: Major Solis' assurance that all the actions he took regarding Plaintiff were based on her conduct, not her race, gender, or

protected activity; and that Plaintiff was selected for and removed from the FTC program by the same individual. *Id.* at 9. The second factor—being hired and fired by the same person within a short period of time—has been held by courts in this circuit to give rise to a permissible inference that no discriminatory animus was present. *Id.* (citing *Aldabblan v. Festive Pizza, Ltd.*, 380 F. Supp. 2d 1345, 1352 (S.D. Fla. 2005); *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1443 (11th Cir. 1998)).

Plaintiff responds that she has shown exceptional temporal proximity between protected activities and adverse actions, direct evidence of retaliatory animus, and powerful comparator evidence. ECF No. [43] at 1–2. She refutes that she is required to demonstrate pretext under *McDonnell Douglas* and instead points to *Ismael v. Roundree*, which she claims establishes her true burden here—the convincing mosaic standard. *Id.* at 3 (citing *Ismael*, 161 F.4th 752).

Specifically, Plaintiff argues that she need not establish a *prima facie* case or pretext at all. *Id.* at 10. Instead, the relevant question is the one raised by the convincing mosaic framework: "whether the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination [or retaliation] by the decisionmaker." *Id.* (citing *Ismael*, 161 F.4th at 755).

Plaintiff argues that she has "presented a convincing mosaic of circumstantial evidence creating genuine disputes of material fact." *Id.* at 11. Relevant to the discrimination analysis (as opposed to the retaliation analysis, though Plaintiff does not separate her discussion of the two), Plaintiff points to her comparator evidence. *Id.* at 12–13. Lieutenant Christian Campo, a Hispanic male, held the FTC position after Plaintiff. *Id.* She claims that he was less qualified and had worse performance but received better treatment, insofar as his reviews were better and he was permitted to remove Sergeant Bustamante. *Id.* at 13. She also points to Lieutenant Darryl Grubbs, a White

30

male, who held the FTC position before Plaintiff. Despite his worse performance, he received better treatment,  was not removed, and was later promoted to Captain. *Id*. Plaintiff finally points to Sergeant Maria Bustamante, a Hispanic female, who admitted that she refused to follow Plaintiff's lawful orders, had a record of 15 policy violations, and only received informal counseling. *Id*. When she was finally removed, she was transferred to another specialized unit, not demoted like Plaintiff was. *Id*.

Plaintiff also points to weaknesses and contradictions in Defendant's explanations. *Id.* at 16. She notes that the "petition" to remove Sergeant Bustamante was Captain Meyer's own suggestion. *Id*. She states that the "effectiveness/efficiency" rationale for removing Plaintiff falls flat in light of the fact that Plaintiff brought the program from behind to current. *Id*. And she contends that the "insubordination" argument based on Plaintiff calling her superior "sweetie" does not hold water when Plaintiff immediately apologized. *Id*.

Plaintiff also points to statistical evidence. *Id*. Specifically, White females represent only 2.8–3% of MDPD. *Id*. Moreover, she was the only White female Lieutenant under Major Solis' command. *Id*.

Plaintiff continues by alleging a disparate workload. *Id*. She contends she was the only FTC required to supervise all three squads "as if it was its own platoon." *Id*. Indeed, neither her predecessor nor her successor had those dual responsibilities. *Id.* at 17. She notes that she was assigned additional special projects that no other FTC received. *Id*.

She contends that Defendants committed policy violations in administering discipline. *Id*. They gave her a negative performance evaluation without giving her 90 days' notice to improve as required. *Id*. Lieutenant Campo was selected for the FTC position despite being probationary. *Id*. And Sergeant Bustamante was selected as Field Training Sergeant while probationary. *Id*.

Plaintiff stresses that the Court should give no credence to Defendants' argument that because Solis selected and demoted Plaintiff, any inference of discriminatory animus is belied. *Id*. at 20 (citing *Wascura v. City of S. Miami*, 257 F.3d 1238, 1243 (11th Cir. 2001)).

In their Reply, Defendants first argue that Plaintiff appears to admit her inability to establish a *prima facie* case for discrimination or pretext under the *McDonnell Douglas* framework. ECF No. [51] at 10. As a result, she instead focuses on the convincing mosaic standard. *Id.* at 11. But Plaintiff's comparator evidence does not establish a convincing mosaic. *Id.* at 12. Defendants contend that nothing in the record supports Plaintiff's allegations of more favorable treatment; nothing indicates that any more favorable treatment had to do with race, gender, or protected activity; and none of her purported comparators were shown to have "the same type of performance issues and ongoing disruptive behaviors as Plaintiff." *Id.* at 13. Defendants reiterate their argument regarding the treatment of Jenna Parmentor, a White female. *Id*. at 13–14. They point out Plaintiff's admission that Parmentor was treated favorably and contend that her speculative explanations for why Parmentor might have been treated more favorably are owed no deference. *Id.* at 14. Finally, Defendants argue that there is no evidence that Major Solis had any discriminatory intent, especially since he was the same person who hired Plaintiff. *Id.* at 15.

The Court begins by clarifying the relationship between the *McDonnell Douglas* framework and the convincing mosaic standard considering *Ismael*, in particular focusing on Plaintiff's burden. *Ismael* did not replace the *McDonnell Douglas* standard with the convincing mosaic standard. It made clear that "a plaintiff who cannot establish the *McDonnell Douglas prima facie* case is entitled to a full review under the convincing mosaic standard." *Ismael*, 161 F.4th at 761. And while a plaintiff *can* make their case by demonstrating that their employer's proffered legitimate reason for an adverse employment action was pretextual, a plaintiff need not

demonstrate pretext; instead, the plaintiff can still satisfy their burden by merely showing a sufficient evidentiary basis for finding discrimination. *Id.* at 761–62. Ultimately, it is the plaintiff's affirmative claim that matters, not defendant's justification. *Id.* at 761.

Here, Plaintiff has opted to forgo the *McDonnell Douglas* approach in favor of the convincing mosaic standard. ECF No. [43] at 10. Rather than attempt to show a *prima facie* case and then rebut purportedly pretextual justifications for adverse employment actions, Plaintiff focuses more squarely on whether her evidence "presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination [or retaliation] by the decisionmaker." *Id*. (citing *Ismael*, 161 F.4th at 755).

Based on the record viewed in the light most favorable to Plaintiff, the Court finds that no reasonable jury could infer that intentional discrimination drove the adverse employment actions that Plaintiff experienced. Since the  equitably tolling does not bar  Plaintiff from  bringing her claims, the Court considers all of Plaintiff's allegations before July 15, 2024 (the last date of discrimination cited in Plaintiff's EEOC Charge). ECF No. [37] at ¶ 43.

The Court begins by addressing which claims qualify for consideration as discriminatory. In any discrimination case, Plaintiff is required to point to an adverse employment action. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). An adverse employment action in a discrimination case involves "a serious and material change in the terms, conditions, or privileges of employment." *Crawford*, 529 F.3d at 970–71 (citation and emphasis omitted). More obvious examples of adverse employment actions include "termination, demotion, suspension, a reduction in pay, or a change in job duties." *Barnett v. Athens Reg'l Med. Ctr. Inc.*, 550 F. App'x 711, 713 (11th Cir. 2013). But the term "adverse employment action" also encompasses less obvious changes in employment, including "loss of benefits, denial of promotions, workplace

reassignment, transfer, or change in permanent job title." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1236 (11th Cir. 2001).

Here, Plaintiff has admitted that an ROC is not a disciplinary action and does not result in a loss of pay or benefits. ECF No. [42] at ¶ 12. As such, the Court does not consider any instances of ROCs adverse employment actions. *Dixon v. Palm Beach Cnty. Parks & Recreation Dep't*, 343 F. App'x 500, 502 (11th Cir. 2009) (finding that an ROC is not an adverse employment action). Moreover, negative performance reviews are not adverse employment actions. *Barnett*, 550 F. App'x at 713 (holding that negative performance reviews did not constitute adverse employment actions as they "had no effect" on plaintiff's employment).

However, the DARs and Plaintiff's removal from her FTC position are a different story. Each of those represents an adverse employment action. The two DARs, initiated on September 7, 2023 and May 3, 2024, ECF No. [37] at ¶ 26, 35, resulted in 5-day suspensions for Plaintiff, and Defendants admit that those constituted adverse employment actions. ECF No. [38] at 6l; *see also Singleton v. Pub. Health Tr. of Miami-Dade Cnty.*, 725 F. App'x 736, 739 (11th Cir. 2018) (treating a DAR as an adverse employment action). And demotion is a canonical case of an adverse employment action. *Crawford*, 529 F.3d at 970. Thus, the Court considers the evidence regarding those three adverse employment actions.

With respect to the first DAR, initiated by Captain Meyer, the stated reason for its initiation was Plaintiff's "petition to remove Bustamante—specifically, that she failed to secure chain-of-command approval, publicly undermined a subordinate's authority, and interfered with unit operations." ECF No. [37] at ¶ 26. Plaintiff alleges that Captain Meyer was the person who suggested the use of a petition to remove Sergeant Bustamante. ECF No. [42] at ¶ 13. But nothing in Plaintiff's allegations disputes that she did commit a policy violation, *see* ECF No. [37-15] at

3, and that discipline would have been warranted on that basis. The record clearly reflects that distributing the petition was contrary to policy and that the MDPD was operating according to policy in disciplining her. That Captain Meyer was the one who floated the idea of a petition certainly calls into question whether the decision was "prudent or fair," but it does not raise an implication of discriminatory animus. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Plaintiff points to no "suspicious timing," insofar as her petition was distributed on or around August 21, 2023, and the DAR was initiated September 7, 2023, ECF No. [37-15]. *See Yelling*, 82 F.4th at 1342. She fail to point to any "ambiguous statements" from Captain Meyer that could be interpreted as discriminatory animus. *Id*. She fails to point to a similarly situated employee who was treated better—that is, one who circulated a petition but was not removed. *Id*. And the record reflects that Defendants' stated reason for the DAR was amply supported by policy. *Id*.

Of course, it is possible that a defendant could follow its own policy in effectuating discipline and still have its true reason for discipline be discriminatory, but Plaintiff fails to point to any record evidence  implying any other motive for Captain Meyer's actions. Indeed, the only other insight into Captain Meyer's treatment of other people in Plaintiff's protected classes is his *preferential* treatment of Jenna Parmentor, a White woman. ECF No. [37-2] at 100–01. That "another employee in the same protected class as the plaintiff receives favorable treatment" can be used "as evidence to show that the employer's articulated reason for the employment decision is not a pretext for unlawful discrimination." *McGee v. Stone & Webster Constr., Inc.*, 2008 WL 11422673, *13 n.96 (N.D. Ala. Feb. 29, 2008); *see also Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1186 n.1 (11th Cir. 1994) (noting that while "Title VII does not 'give an employer license to discriminate against some employees on the basis of race or sex merely

because he favorably treats other members of the employees' group,'" it is nonetheless "not irrelevant" when another employee in the same protected class as the plaintiff receives favorable treatment (internal citation omitted)); *Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 524 (3d Cir. 2003) ("While not conclusive, an employer's favorable treatment of other members of a protected class can create an inference that the employer lacks discriminatory intent."); *Elion v. Jackson*, 544 F. Supp. 2d 1, 8 (D.D.C. 2008) (noting that "'[m]e too' evidence of an employer's past *non*-discriminatory and *non*-retaliatory behavior may be relevant" in Title VII action). In light of these considerations, Plaintiff has not carried her burden of showing that a jury could reasonably find discriminatory intent in her first DAR.

As for the second DAR, initiated on May 3, 2024, the purported reason for its initiation was Plaintiff's insubordination and violation of the chain of command during a counseling meeting on April 24, 2024. ECF No. [37] at ¶ 35. During the meeting, Plaintiff referred to Captain Diaz de Villegas as "sweetie" and interrupted the meeting to make a "direct call to the MDPD Director despite being told not to do so." *Id*. Plaintiff admits that the interaction occurred but argues that she "immediately apologized" for her choice of nomenclature and that calling the Director was "pursuant to a written request properly submitted via chain of command on April 15, 2024." ECF No. [42] at 13. The record evidence shows that Defendant simply followed its policy of punishing insubordination and violation of the chain of command. ECF No. [37-18] at 4. Plaintiff has not pointed to any record evidence suggesting that discriminatory animus motivated the DAR—no comparators, no evidence that the stated reason for the DAR was pretextual, no suspicious timing, and no ambiguous statements. In short, there is a lack of evidence sufficient to find discriminatory intent underlying the second DAR.

The Court now turns to Defendants' decision to demote Plaintiff from her FTC position. Plaintiff has adduced what she calls "powerful" comparator evidence, ECF No. [43] at 12. Plaintiff points to her White male predecessor, Lieutenant Derryl Grubbs. As FTC, he allowed management of the program's files to fall eight months behind. ECF No. [43] at 13. Nonetheless, he was not removed from the position and was later promoted to Captain. *Id*. Plaintiff thus inherited a program with an eight-month backlog, and she alleges that she brought the program to current. *Id*. Plaintiff's successor, Christian Campo, a Hispanic male, was elevated to the FTC position despite being on "probationary" status. *Id*. He has since allowed the program files to fall two years behind; still, he was not removed from his position, received "Outstanding" evaluations, and was allowed to remove Sergeant Bustamante. *Id*. Both her predecessor and successor reported to Major Solis. *Id*. Still, the stated reason for removing Plaintiff from her FTC position was "Effectiveness and/or Efficiency of Unit" and "Operational Necessity." ECF No. [37] at 5.

As noted above, circumstantial evidence of illegal discrimination can include evidence of "systematically better treatment of similarly situated employees" and evidence "that the employer's justification is pretextual." *Lewis v. City of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 733–34 (7th Cir. 2011)) (internal quotation marks omitted). But here, there is an important distinction between Plaintiff and her purported comparators. As Defendants point out, there is no evidence that those two other individuals had the "same type of performance issues and ongoing disruptive behaviors as Plaintiff." ECF No. [38] at 7. Most significantly, Plaintiff does not dispute that she circulated her petition for removal of Sergeant Bustamante on August 21, 2023. ECF No. [37-10]. The notice demoting her from her FTC position was transmitted on August 30, 2023. ECF No. [37-14]. Even assuming Captain Meyer suggested the petition, it was Major Solis who made the decision to

demote Plaintiff, ECF No. [37] at ¶ 23, and there is no evidence in the record that he conspired with Captain Meyer to encourage Plaintiff to distribute the petition. Instead, Major Solis was confronted with an employee who had created a substantial disruption to the Field Training and Evaluation Program.[12] Plaintiff does not claim that either Grubbs or Campo took similar actions. *See generally* ECF No. [43]. Thus, her purported comparators are too different from her to prove helpful in demonstrating a plausible inference of discrimination. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) ("In determining whether employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." (quotations omitted)).[13] Plaintiff could have created an issue of fact by "'specifically refuting facts that allegedly support the employer's claim of performance deficiencies,'" *Chapman v. AI Transp.*, 229 F.3d 1012, 1061 n.76 (11th Cir. 2000) (quoting *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446,

---

[12] This is in addition to Plaintiff's other disruptive behaviors, which include the following: issues with managerial skills and issues with subordinates, ECF No. [37] at ¶¶ 10, 13; a use of force incident involving a taser, *id.* at ¶ 11; concerns regarding Plaintiff's "judgment" stemming from the petition incident, *id.* at ¶ 14; Plaintiff improperly submitting for excessive Compensatory Time, *id.* at ¶ 18; Plaintiff being "disrespectful, argumentative, and insubordinate" towards Captain Diaz de Villegas and "inappropriately" calling the director, *id.* at ¶ 19; and Plaintiff's failure to properly interpret or apply the "proper Departmental policy, procedure, or rule," *id.* at ¶ 20. For most of those instances, Plaintiff does not dispute that they occurred but instead claims that context makes the deviations from acceptable behavior less problematic. *See generally* ECF No. [42].

[13] In certain cases, the Eleventh Circuit has indicated that, for someone to serve as a valid comparator, their conduct must be "nearly identical" to the Plaintiff's conduct. *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1185 (11th Cir. 1984). In other cases, the Eleventh Circuit has indicated that a comparator is "similarly situated" if he or she was accused of "the same or similar conduct." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997), *abrogated on other grounds by Lewis*, 918 F.3d 1213; *Anderson v. WBMG-42*, 253 F.3d 561, 564 (11th Cir. 2001).

Any conflict between those standards is immaterial as Plaintiff fails to establish a comparator under either standard. Plaintiff's demotion came on the heels of and was purportedly the result of Plaintiff circulating a petition to remove Sergeant Bustamante, as well as other disruptive behaviors cited in footnote 12 above. Plaintiff does not dispute that she took most of those actions. And Plaintiff does not indicate whether *any* of these purported grounds—including the ones to which she admits—similarly applied to Grubbs or Campo, making them unsuitable comparators.

1460 (7th Cir. 1994)), but she did not do so. That is, Plaintiff fails to refute that she took substantially more disruptive actions than Grubbs or Campo.

While *Ismael* makes clear that comparator evidence is still relevant even if there are "material differences" between a plaintiff and her comparators, 161 F.4th at 764 (quoting *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 945 (11th Cir. 2023)), "the same evidence placed in a looser frame does not transform it into something new." *Melton v. I-10 Truck Ctr. Inc*, 166 F.4th 905, 915 (11th Cir. 2026) (citation omitted). That is, whether under *McDonnell Douglas* or the convincing mosaic standard, Plaintiff and her would-be comparators are simply too different to support a finding of racial discrimination.

Plaintiff's remaining arguments are unavailing. She points to the statistic that White females represent only 2.8–3% of the MDPD and that she was the only White female Lieutenant under Major Solis' command. ECF No. [43] at 16. But those figures are irrelevant on their own. As the Supreme Court has made clear, the proper statistical evidence is a comparison "between the racial composition of the qualified persons in the labor market and the persons holding at-issue jobs." *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 650 (1989). Merely stating, without more, that White females make up a small proportion of the MDPD is insufficient to show disparate impact.

Plaintiff also points to her disparate workload, contending that she was the only FTC required to supervise all three squads "as if it was its own platoon." ECF No. [43] at 16. Even so, additional workload is not an adverse employment action and cannot support a finding of discrimination. *See, e.g., Grimsley v. Marshalls of MA, Inc.*, 284 F. App'x 604, 609 (11th Cir. 2008); *White v. Hall*, 389 F. App'x 956, 960 (11th Cir. 2010) (assignment of more difficult work tasks was not adverse employment action).

Plaintiff also points out that Defendants committed policy violations in administering discipline. ECF No. [43] at 17. They gave her a negative performance evaluation without giving her 90 days' notice to improve as required. *Id*. Lieutenant Campo was selected for the FTC position despite being probationary, and Sergeant Bustamante was selected as Field Training Sergeant while probationary. *Id*. True enough, violation of policy can be probative of discrimination. *See Connelly v. WellStar Health Sys., Inc.*, 758 F. App'x 825, 829 (11th Cir. 2019). But "mere failure to follow operating procedures, without more, does not necessarily suggest that an employer was motivated by illegal discriminatory intent." *Id.* (citing *Mitchell v. USBI Co.*, 186 F.3d 1352, 1355–56 (11th Cir. 1999)). Moreover, Plaintiff does not allege any violation of policy in the adverse employment actions *taken against her*. That is, she alleges violations of policy that are not relevant to the decision to demote or suspend Plaintiff.

Plaintiff stresses that the Court should give no credence to Defendants' argument that because Solis selected and demoted Plaintiff, any inference of discriminatory animus is belied. *Id*. at 20 (citing *Wascura v. City of S. Miami*, 257 F.3d 1238, 1243 (11th Cir. 2001)). The Court agrees with Plaintiff, but it does not rest its decision on Defendants' contention , so this point ultimately does not move the needle. While it is true that the Eleventh Circuit "declin[d]e to accord to this 'same actor' factual circumstance a *presumption* that discrimination necessarily was absent from the decision to terminate [the plaintiff]," *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1443 (11th Cir. 1998), the Court views the absence of a convincing mosaic as dispositive, not the presence of this same decision-maker.

Overall, the Court returns to the convincing mosaic framework. A convincing mosaic may be shown by "(1) 'suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment

of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis*, 934 F.3d at 1185 (quoting *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 733–34 (7th Cir. 2011), *overruled by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016)). Plaintiff has simply failed to adduce competent evidence demonstrating discrimination. Plaintiff points to would-be comparators, statistical evidence, disparate workload, and claimed policy violations by Defendants. But taken alone or together, those factors are not sufficient to sustain a finding of racial or gender discrimination. There is no evidence of whether her "comparators" had similarly disruptive behaviors, making it impossible to gauge whether they would have been demoted for taking the same actions as Plaintiff. Plaintiff's statistical evidence provides no reference to the general population or the applicant pool, providing no basis to conclude discrimination was afoot. Disparate workload is not an adverse employment action, and policy violations that occurred sporadically in other parts of the organization, unrelated to the adverse employment actions taken against Plaintiff, do not carry any implications regarding Plaintiff's treatment. The decisions may not have been "prudent or fair," but that does not mean that discriminatory animus can be found. *Damon*, 196 F.3d at 1361. Thus, Plaintiff's Title VII claims and FCRA claims based on racial and gender discrimination are dismissed, as is her § 1983 claim to the extent it depends on an underlying violation of Title VII.

### D.  Retaliation Claims

In Counts V and VI, Plaintiff brings retaliation claims against the County under Title VII and the FCRA, respectively. ECF No. [15]. She also brings a retaliation claim under § 1983 in Count VII. *Id.* at ¶ 60.

To prevail on a retaliation claim under the *McDonnell Douglas* framework, a plaintiff must present evidence that (1) she engaged in a statutorily protected activity, (2) she suffered a materially adverse action, and (3) there was a causal connection between the two events. *See*

*Fulford v. Miami-Dade County*, 219 F. Supp. 3d 1248, 1255 (S.D. Fla. 2016); *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). This is true whether the claim is brought under § 1981 or the FCRA. *See Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020); *Flores v. Devry Univ., Inc.*, 573 F. App'x 833, 835 (11th Cir. 2014). Similar to discrimination claims, a plaintiff's retaliation claims may survive summary judgment based on a convincing mosaic of circumstantial evidence. *See Decoste v. City of Boynton Beach*, No. 24-81529-CIV, 2026 WL 265266, at *17 (S.D. Fla. Jan. 29, 2026). Whatever form the evidence takes, "so long as [it] raises a reasonable inference" that the employer retaliated against the employee, 'summary judgment is improper.'" *Id*.

There is no genuine dispute that the type of complaints Plaintiff made to her supervisors and the HRFEP/PCB are typically considered protected activities, given that "[t]he making of informal complaints or the use of an internal grievance system is protected conduct under the opposition clause." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1144 (11th Cir. 2020); *see also Furcron v. Mail Cntrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) (noting the non-discrimination "protections are not limited to individuals who file formal complaints, but extend to those who voice informal complaints as well"); *DeLeon v. ST Mobile Aerospace Engineering, Inc.*, 684 F. Supp. 2d 1301, 1324 (S.D. Ala. 2010) ("Statutorily protected expression includes complaining to superiors about harassment in the work place, lodging complaints with the EEOC and participating in discrimination-based lawsuits.").

However, to establish protected activity under the opposition clause, a plaintiff must show that she had a good faith and objectively reasonable belief that her employer was engaged in unlawful employment practices. *Anduze v. Fla. Atl. Univ.*, 151 F. App'x 875, 878 (11th Cir. 2005). "A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his

42

employer was engaged in unlawful employment practices, but also that his belief was *objectively reasonable in light of the facts and record presented.*" *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (emphasis in original). That does not require the plaintiff prove that the employment practice was unlawful, but "the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." *Id.*; *see also Johnson v. Fam. Prac. & Inj. Ctr., Inc.*, 437 F. Supp. 3d 1108, 1123 (M.D. Fla. 2020) ("The plaintiff is not required to prove that the alleged discriminatory conduct was actually unlawful, as such opposed conduct need only be 'close enough' to support the objectively reasonable belief." (quoting *Furcron*, 843 F.3d at 1311)).

Defendants argue that summary judgment is proper as to Plaintiff's retaliation claims because Plaintiff "fails to meet the first and third prongs of the *prima facie* test." ECF No. [38] at 10. As to the first prong, Defendants point out that Plaintiff alleges a variety of complaints that purportedly constitute protected activity, including: "(1) a complaint to Captain Ryan Howett and Maj. Solis dated March 10, 2023 []; (2) a complaint to Chief Gina Beato-Dominguez on August 30, 2023 []; and (3) a complaint submitted to the Miami-Dade Office of Human Rights and Fair Employment Practices and to the Professional Compliance Bureau on September 11 and 13, 2023, respectively." *Id*. But apart from her HRFEP and PCB complaints, Defendants contend that none of Plaintiff's complaints constitute protected activity because they do not mention a belief that Plaintiff was being discriminated against on the basis of gender or race. *Id*.

As to the second prong, Defendants contend that none of the allegedly retaliatory acts cited by Plaintiff constitutes material adverse employment action apart from her 5-day suspension. *Id.* at 11.

43

As to the third prong, Defendants contend that Plaintiff cannot show a causal connection between protected activity and adverse action. Plaintiff's HRFEP/PCB complaint was submitted on September 11, 2023, and her second 5-day suspension was initiated nearly eight months later. *Id*. Moreover, Defendants contend there is no evidence that Captain Diaz de Villega knew of the HRFEP/PCB complaint at the time he initiated Plaintiff's second 5-day suspension. *Id*.

Plaintiff responds that she has pointed to close temporal proximity, which is probative of causation. ECF No. [43] at 11. She notes that her March 10, 2023 email "questioning gender-based treatment" was followed on March 29, 2023 by Major Solis threatening to remove her if she complained again and then, on March 30, 2023, by the first ROC being issued. *Id*. She then points to the period of August 2023 to September 2023, during which: (1) Plaintiff texted her chief about discrimination (August 30, 2023), (2) Plaintiff met with the chief and Major Solis (September 5, 2023), (3) the first DAR was initiated (September 7, 2023), (4) Plaintiff filed her PCB complaint (September 18, 2023), and (5) Plaintiff was removed from her FTC position (September 18, 2023). *Id*. at 11–12. Finally, Plaintiff points to April 2024, in which: (1) Plaintiff sent a written request to meet with the director (April 15, 2024), (2) Plaintiff met with Chief Garcia about her discrimination concerns (April 24, 2024), (3) the second ROC was issued (April 24, 2024), and (4) the second DAR was issued (May 3, 2024). *Id.* at 12.

Plaintiff also argues there is direct evidence of retaliatory animus. *Id.* at 14. Specifically, she points out that after Plaintiff "complained of gender discrimination on March 10, 2023," Major Solis told her to "never write another email like that again or he would kick [Plaintiff] out of the Field Training Program." *Id*. Ultimately, Major Solis did remove Plaintiff from her FTC position. *Id.* at 15.

Plaintiff further points to the absence of a disciplinary record prior to her complaints. *Id.* at 17. In her 24-year career, she had no disciplinary history. *Id*. She also only had "above satisfactory" evaluations until becoming FTC. *Id*. Following her March 2023 complaint, a "[s]udden cascade of ROCs, DARs, and suspensions" began. *Id*.

Plaintiff next argues that Captain Diaz de Villegas was aware of the complaints at the time he initiated the second DAR. *Id.* at 18. Plaintiff points out that Captain Diaz de Villegas admitted that he became aware of Plaintiff's complaints around two months after starting, and he arrived March 4, 2024; the second DAR was initiated May 3, 2024. *Id*. Major Solis also gave Captain Diaz de Villegas "a packet" with Plaintiff's complaints, and Plaintiff told Captain Diaz de Villegas about her complaints—indeed, Plaintiff testified that she met with Captain Diaz de Villegas in March 2024 and told him about her discrimination allegations and PCB complaint. *Id*.

Finally, Plaintiff argues that the March 10, 2023 email constitutes protected activity because in it, Plaintiff expressly asked if she was being treated the way she was "because I am a female supervisor." *Id.* at 19. She asked Captain Howett if her treatment was because she was a woman. *Id*. And Plaintiff contends that Major Solis' response to her email—namely, his threat to remove her—proves that he understood it as a discrimination complaint. *Id*.

Defendants reply that, whether under *McDonnell Douglas* or the convincing mosaic framework, Defendants are entitled to summary judgment. ECF No. [51] at 10–11. First, they reiterate that Plaintiff's email "questioning" her treatment did not constitute protected activity because a "mere inquiry or question about whether conduct is based on race or gender, without a clear assertion that conduct is discriminatory or objectionable, is not protected activity." *Id.* at 11. They rely on *Herron-Williams v. Alabama State University*, in which an employee sent an email "complain[ing]" about her treatment; even though the email mentioned race and gender

45

discrimination (albeit one time in a 15-paragraph email). *Id.* (citing 805 F. App'x 622, 632 (11th Cir. 2020)). There, the Eleventh Circuit found that the email was not protected activity because the conduct alleged was not close enough to unlawful discrimination to support an objectively reasonable belief of discrimination. *Id.* (citing 805 F. App'x at 632). Similarly, Plaintiff's only mention of gender was a single question asking if her treatment was the result of her gender. *Id.* Pursuant to *Herron-Williams*, Defendants contend this is insufficient. *Id.*

Defendants contend that Even if Plaintiff's email constituted protected activity, there is no temporal proximity between the email and adverse employment actions. *Id.* at 12. All of the adverse employment actions occurred six months or more after Plaintiff's email. *Id.* There is similarly no causal connection between Plaintiff's September 2023 HRFEP/PCB complaint and her removal from the FTC position because Plaintiff was removed August 30, 2023. *Id.*

Finally, Defendants argue that nothing in the record gives rise to a convincing mosaic of evidence to support a finding of intentional retaliation. *Id.* at 15. Major Solis confirmed that all of his actions were based on Plaintiff's conduct, not her protected characteristics or conduct, and indeed, he was the same person who hired and fired her. *Id.*

Based on the evidence taken in the light most favorable to Plaintiff, the Court finds that no reasonable jury could infer unlawful retaliation. As the Court discussed earlier, there are three adverse employment actions at issue: Plaintiff's first DAR (September 7, 2023), her removal from the FTC position (August 30, 2023), and her second DAR (May 3, 2024). Plaintiff alleges a few purported complaints: her email to Captain Howett (March 10, 2023), her complaints to Chief Beato-Dominguez (August 30, 2023), her meeting with Chief Beato-Dominguez and Major Solis (September 5, 2023), her FRFEP/PCB complaints (September 11–13, 2023), and her complaints

to Chief Garcia (April 24, 2024). ECF No. [43] at 5. The Court begins with Plaintiff's email to Captain Howett on March 10, 2023.

In that email, spanning five pages, Plaintiff asks, "Is the fact that I am a female supervisor the reason that you feel subordinates do not need to be respectful towards me . . . ?" ECF No. [37-11] at 3. Plaintiff makes no other mention or race, gender, sex, being White, or being a woman. *See generally id*. The email does not reference any adverse employment actions and instead raises what can only be characterized as "ordinary tribulations of the workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted). Plaintiff takes issue with the handling of leave for her subordinates, staffing matters, feeling unsupported and unable to discipline subordinates, feeling that her authority has been undermined, and similar subjects. *See generally* ECF No. [37-11]. Indeed, Plaintiff's question regarding her sex was raised in the context of her concern that subordinates were not required to respect her and that supervisors could ignore her and appoint subordinates to do her job.

Nothing raised in this email constitutes unlawful discrimination. Thus, the Court is guided by the reasoning in *Herron-Williams*. There, the plaintiff wrote a three-page email detailing what she described as "highly unprofessional and unethical" treatment of her. 805 F. App'x at 625. She concluded, "In my case, the intolerable actions of . . . administrators can only be based on gender, age, or educational background if not race and ethnicity. A hostile work environment has been created." *Id*. Five weeks later, she was demoted. *Id*.

The Eleventh Circuit concluded that the conduct alleged in the email was "simply not close enough to race or gender discrimination to support an objectively reasonable belief that [her employer] was unlawfully discriminating against her." *Id.* at 632. Inexplicability does not give rise to an inference of unlawful discrimination. *Id*. This is especially so where the plaintiff's only

47

explanation for her accusation of discrimination is "a single, conclusory sentence" in a "fifteen-paragraph email." *Id*.

The instant case is strikingly similar to the facts presented in *Herron-Williams*. Indeed, Plaintiff's email was longer, her allegation of discrimination *more* equivocal and conclusory (insofar as it was a question rather than an accusation), and her examples of poor treatment equally far from adverse employment actions. Fundamentally, the objective reasonableness of a belief "is measured by reference to controlling substantive law." *Furcron v. Mail Cntrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) (citing *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008)). But far from showing discrimination in her email, Plaintiff did not show even a "close case." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999). As such, Plaintiff's beliefs about discrimination could not have been objectively reasonable, and her email was not protected activity.

Even if Plaintiff's email constituted protected activity, Plaintiff's allegations of close temporal proximity fall flat. Plaintiff sent her email to Captain Howett on March 10, 2023. ECF No. [37] at ¶ 21. Her removal from the FTC position occurred on August 30, 2023, and her first DAR was initiated September 7, 2023, over six months later. The Eleventh Circuit has indicated that a three to four-month disparity between statutorily protected expression and adverse employment action is not enough on its own to establish causation. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *Hughes v. Derwinski*, 967 F.2d 1168, 1174–75 (7th Cir. 1992)); *see also Grant v. Miami-Dade Cnty. Water & Sewer Dep't*, 636 F. App'x 462, 469 (11th Cir. 2015) (finding that a three to four-month period between the protected activity and adverse action is "too attenuated" to show causation (citing *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004))). Moreover,

while close temporal proximity can go a long way toward establishing a causal connection, "an intervening act of misconduct" can "diminish[] any inference of causation." *Henderson v. FedEx Express*, 442 F. App'x 502, 507 (11th Cir. 2011) (citation omitted). Plaintiff's petition activity occurred August 21, 2023, and  represents a significant intervening act of misconduct. And none of this takes into account that Plaintiff's explanation—that Major Solis was acting on his threat— does not logically make sense; Major Solis allegedly threatened to remove Plaintiff *if she sent another accusatory email*; Plaintiff did not send a new email or  new complaint at the time she was removed from the FTC position. ECF No. [43-1] at 42 (acknowledging that Plaintiff sent her complaint to Captain Beato-Dominguez after being removed from the FTC position). In light of those considerations, the Court finds that Plaintiff cannot show retaliation with respect to her March 10, 2023 email.

As to Plaintiff's HRFEP and PCB complaints, filed September 11, 2023 and September 13, 2023, the Court similarly finds that no inference of retaliation can be drawn. Plaintiff was removed from the FTC position by Major Solis August 30, 2023, ECF No. [37] at ¶ 23, and the first DAR was initiated by Captain Meyer September 7, 2023, *id.* at ¶ 26, both *before* the complaints were filed. The second DAR was initiated by Captain Diaz de Villegas on May 3, 2024, *Id.* at ¶ 35, eight months *after* the complaints were filed.

To show a causal link, Plaintiff must "at a minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997) (citing *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993)). Plaintiff alleges that her "supervisors" were aware that she was planning to file a PCB complaint following her September 5, 2023 meeting with Chief Beato-Dominguez and Major Solis. ECF No. [43-1] at 38.

49

But Plaintiff has offered no evidence that *anyone* was aware of her plan to submit a PCB complaint on August 30, 2023. Indeed, this would not have been possible, as Plaintiff was first "referred []" to file [her] complaint with the" PCB at the September 5, 2023 meeting. ECF No. [43-1] at 53.

Plaintiff alleges that her "supervisors were well aware of the fact that [she] was preparing my PCB complaint when [she] left that meeting." *Id*. This makes sense in the cases of Chief Beato-Dominguez and Major Solis, as they were at the meeting. But Plaintiff provides no evidence beyond her "conclusory say-so" that Captain Meyer was aware of her intention to file a PCB complaint on September 7, 2023, when he initiated the first DAR. *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1337 (11th Cir. 2015). The Eleventh Circuit's logic in *Raney v. Vinson Guard Services, Inc.* guides the Court's reasoning:

> [Plaintiff] submitted no direct evidence indicating that she told [Captain Meyer] of her threatened legal action. And while we have held that awareness of protected expression may be established based on circumstantial evidence, our cases have required plaintiffs to show a defendant's awareness with more evidence than mere curious timing coupled with speculative theories.

*Raney*, 120 F.3d at 1197 (citing *Goldsmith*, 996 F.2d at 1163). Plaintiff does not claim that Major Solis or Chief Beato-Dominguez told Captain Meyer about Plaintiff's plan to submit a PCB complaint. There is simply nothing from which a reasonable juror could conclude that Captain Meyer was aware of Plaintiff's intended complaint at the time he initiated the first DAR. And the second DAR, initiated May 3, 2024 by Captain Diaz de Villegas, is far too temporally attenuated to support a causal connection. Indeed, the second DAR came approximately eight months after Plaintiff's HRFEP/PCB complaints, well beyond the three-to-four-month disparity that the Eleventh Circuit has found too long to support a finding of causal connection on its own. *See Thomas*, 506 F.3d at 1364; *Grant*, 636 F. App'x at 468–69 (citing *Higdon*, 393 F.3d at 1220).

50

Even if there was evidence that Captain Diaz de Villegas knew about Plaintiff's HRFEP/PCB complaints at the time he initiated the second DAR, it does not change the Court's analysis. For one, the time gap is simply too great, as described above. Moreover, Plaintiff engaged in an "intervening act of misconduct" which, in this case, serves to break the causal chain. *Henderson*, 442 F. App'x at 507 (citation omitted). Specifically, she called Captain Diaz de Villegas "sweetie" during a meeting and directly ignored his orders by calling the director during the middle of the meeting. ECF No. [37] at ¶ 35. And as a more general matter, an employee that engages in protected activity is not forever thereafter shielded from otherwise appropriate discipline. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1270 (11th Cir. 2010). So even if Captain Diaz de Villegas knew of Plaintiff's complaints, it does not change that Plaintiff engaged in behavior that warranted, justified, and explained her discipline.

The final matter to address is whether a reasonable jury could infer a causal connection between Plaintiff's April 24, 2024 complaints to Chief Garcia and Captain Diaz de Villegas' initiation of a DAR on May 3, 2024. Plaintiff alleges that Captain Diaz de Villegas "knew what [she] was discussing with Chief Garcia," given the manner in which her memo to Chief Garcia was submitted. ECF No. [43-1] at 31. Even taking it as true that Captain Diaz de Villegas knew about the content of Plaintiff's meeting with Chief Garcia, yet again, an intervening event disrupts the causal chain. That is, the meeting during which Plaintiff called Captain Diaz de Villegas "sweetie" and directly ignored his orders occurred on May 1, 2024, ECF No. [42] at ¶¶ 14–20. This undermines any inference of a causal connection between the meeting with Chief Garcia and the second DAR.

Fundamentally, Plaintiff fails to offer evidence that can support a causal connection between any protected activity and adverse employment actions. The complaints she references

are either not objectively reasonable, too temporally distant from the adverse employment actions, or followed by an intervening act of misconduct that breaks the causal chain. Summary judgment is appropriate on Plaintiff's retaliation claims and her § 1983 claim to the extent it relies on underlying retaliation.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment, **ECF No. [38]**, is **GRANTED**.

2. Summary Judgment is granted in favor of Defendant and against Plaintiff as to **COUNTS I–VII**.

3. The Clerk of Court shall **CLOSE** this case.

4. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on **March 25, 2026**.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record